UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. JASON D. COHEN, M.D., F.A.C.S., as designated representative of F.L., and Patient F.L., <br><br>Plaintiffs, <br><br>v. <br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY and VISITING NURSE ASSOCIATION HEALTH GROUP <br><br>Defendants. | Civil Action No. 2:13-CV-03057 (JLL)(JAD) <br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Horizon Blue Cross Blue Shield of New Jersey ("Horizon")'s motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). The Court has considered the submissions made in support of and in opposition to Horizon's motion, and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Horizon's motion is **granted** in part and **denied** in part.

I.  BACKGROUND[1]

---

[1] The facts stated herein are taken from the complaint and health plan attached as Exhibit A to defense counsel's declaration. The Court may properly consider the health plan without converting Defendants' motion to dismiss into one for summary judgment because Plaintiffs' claims are based on the Plan referenced in the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (observing "that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.") (bracketed text in original) (internal quotation marks and citations omitted). Additionally, the Court notes that Plaintiffs' complaint contains extensive legal arguments and conclusions which the Court will not credit. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs Dr. Jason Cohen ("Dr. Cohen") and Patient F.L. bring this action under the Employee Retirement Income Security Act ("ERISA") to recover alleged underpayments for two medical procedures Dr. Cohen performed on Patient F.L. in 2011.

A.  The Health Insurance Plan

At the time of the medical procedures at issue, Patient F.L. was a participant in a health plan (the "Plan") self-insured by his employer, Defendant Visiting Nurse Association Health Group ("VNA"). (Compl. at ¶¶ 3, 4; Bunn Decl., Ex. A at 5.) VNA served as the Plan's administrator, and was responsible for making all final decisions with respect to claims brought under the Plan. (Compl. at ¶ 12; Bunn Decl., Ex. A at 5, 82.) Horizon served as the Plan's third-party administrator, and was responsible for the initial review of claims, and providing administrative services. (Bunn Decl., Ex. A at 5, 82.)

Plaintiffs claim that under the Plan's terms, Horizon "exercises discretionary authority and control in its interactions with self-funded healthcare plans and employer sponsored group health plans and their subscribers." (Compl. at ¶16.) Thus, according to Plaintiffs, Defendants are fiduciaries under the Plan whose functions include the "preparation and submission of explanations of benefits, determinations as to claims for benefits and coverage decisions, oral and written communications with Dr. Cohen concerning benefits of Patient F.L. under the [P]lan, and coverage, handling, management, review, decision making and disposition of appeals and grievances under the [P]lan." (Compl. at ¶17.)

The Plan permits subscribers to obtain healthcare services from providers and facilities, such as those run by Dr. Cohen, which have not entered into contracts with Horizon. (Compl. at ¶ 8.) Such providers and facilities are referred to as "out-of-network providers" or "non-participating providers." (*Id.*) According to Plaintiffs, the terms of the Plan require Horizon and

2

VNA "to pay benefits for such out-of-network services based on the usual, customary and reasonable rates for those services in the geographic area in which the medical provider is located." (Compl. at ¶ 9.)

As a participant in the Plan, Patient F.L. is promised at least two benefits: (a) the freedom to choose his healthcare provider and (b) the expectation to receive reasonable reimbursements for healthcare costs. (Compl. ¶ 19.)

B.   Dr. Cohen's General Practice in Providing Out-of-Network Services

When providing services as an out-of-network provider, Dr. Cohen requires all patients to sign documents whereby the patient agrees to be personally liable for all medical charges. (Compl. ¶ 13.) Dr. Cohen also obtains from the patient an Authorization of Designated Representative and an Assignment of Benefits with Rights ("AOB") which allegedly make Dr. Cohen a beneficiary under the Plan. (*Id.*) Dr. Cohen does not waive any deductible or co-payment by accepting the AOB. (*Id.*)

Dr. Cohen performed two separate medical procedures that are the subject of Plaintiffs' claims.

C.   Dr. Cohen's Claim for Payment in Connection with the First Procedure Performed on Patient F.L.

At some point in the middle of 2011, Dr. Cohen performed a medical procedure on Patient F.L. The procedure was performed at Monmouth Medical Center in Long Branch, New Jersey where Dr. Cohen enjoys surgical privileges. (Compl. at ¶26.) The procedure was medically necessary and appropriate according to recognized medical standards in the community where Dr. Cohen practices. (*Id.* at ¶ 25.)

Prior to performing the procedure, Dr. Cohen confirmed with Horizon that Patient F.L. had out-of-network benefits for the procedure to be provided. (Compl. at ¶ 24.) Dr. Cohen then

3

obtained an AOB from Patient F.L. which allegedly included the right to receive all benefits of Patient F.L.'s policy and to bring appeals and an action on Patient F.L.'s behalf. (Compl. at ¶¶ 27, 28.)

On or about May 16, 2011, Dr. Cohen sought payment from Horizon by filing an electronic claim seeking $221,847.00 for the procedure performed on Patient F.L. (Compl. at ¶¶ 21, 29.) Horizon received Dr. Cohen's claim on or about May 16, 2011. (Compl. at ¶ 30.)

On or about July 1, 2011, Horizon allegedly made a single payment to Patient F.L. in the amount of $42,557.38, which Patient F.L. surrendered to Dr. Cohen in accordance with the AOB. (Compl. at ¶ 31.) Plaintiffs claim that this payment was $179,289.62 less than the amount of the claim, and represented less than 20% of the amount of the billed services. (Compl. at ¶ 32.)

On July 18, 2011, Dr. Cohen filed a First Level Appeal with Horizon as Patient F.L.'s Authorized Representative. (*Id.* at ¶ 33.) In his appeal, Dr. Cohen explained the billing procedures and provided details as to why the payment he received was significantly less than the usual and customary rates charged by a surgeon in his geographic area. (Compl. at ¶¶ 33, 34.) In his appeal letter, Dr. Cohen also requested documentation that Horizon used in making its compensation determinations. (*Id.* at ¶ 34.)

On or about January 31, 2012, a representative from Dr. Cohen's office spoke with Horizon and was informed that the appeal was not yet finalized and would be forwarded again for resolution. (Compl. at ¶ 35.) As of the time this complaint was filed, Dr. Cohen had not yet received a response to his appeal. (Compl. at ¶36.)

D. <u>Dr. Cohen's Claim for Payment in Connection with the Second Procedure</u>

At some point toward the end of 2011, Dr. Cohen performed a second medical procedure on Patient F.L. The second medical procedure was also performed at Monmouth Medical Center

4

in Long Branch, New Jersey, and was medically necessary and appropriate according to recognized medical standards in the community where Dr. Cohen practices. (*Id.* at ¶¶ 43, 44.)

As he had previously done, Dr. Cohen confirmed that Patient F.L. was entitled to receive out-of-network services, and obtained an AOB from Patient F.L. which included the right to bring appeals and an action on Patient F.L.'s behalf, and to receive all benefits under the Plan. (*Id.* at ¶¶ 42, 44, 45.)

On or about December 2, 2011, Dr. Cohen sought payment from Horizon by filing an electronic claim seeking $84,212.00 for the second procedure performed on Patient F.L. (*Id.* at ¶ 47.) Horizon received the claim on December 8, 2011. Subsequently, Horizon made a single payment to Patient F.L. in the amount of $4,320.00, which Patient F.L. surrendered to Dr. Cohen in accordance with the AOB. (*Id.* at ¶ 49.) This payment was $79,892.00 less than the claim Dr. Cohen submitted, and represented approximately 5% of the total amount of the services billed. (*Id.* at ¶ 50.)

On January 18, 2012, Dr. Cohen filed a First Level Appeal with Horizon as Patient F.L.'s Authorized Representative. (*Id.* at ¶ 51.) Dr. Cohen's appeal letter explained the billing procedures, and provided details as to why the payment he received was significantly less than the usual and customary rates charged by a surgeon in his geographic area. (*Id.* ¶ 52.) In his appeal letter, Dr. Cohen again requested the documentation that Horizon used in making its compensation determinations. (*Id.* at ¶ 52.)

On January 31, 2012, Dr. Cohen's office received a letter from Horizon acknowledging receipt of the appeal. (*Id.* at ¶ 53.) Then, on March 9, 2012, Dr. Cohen received a second letter from Horizon stating that the claim was processed correctly and that no adjustments would be made. (*Id.* at ¶ 54.)

On April 10, 2012, Patient F.L. submitted a separate appeal to Horizon in accordance with the instructions Horizon set forth in its January 31, 2012 letter to Dr. Cohen. Horizon acknowledged receipt of Patient F.L.'s appeal in a letter dated June 13, 2012, which stated that "the appeal has been denied and the original determination is being upheld." (*Id.* at ¶ 56.)

Dr. Cohen then filed a Second Level Appeal with Horizon on October 16, 2012, and requested all documentation Defendants used in making their compensation decisions. (*Id.* at ¶ 57.) On October 23, 2012, Dr. Cohen forwarded to Horizon a duly executed AOB, and requested the Summary Plan Description, 5500 Form, and PPACA Grandfathered Certificate. (*Id.* at ¶ 58.)

On December 5, 2012, Patient F.L. received a written denial stating that he has "now exhausted all the appeal rights through Horizon []," and forwarded this letter to Dr. Cohen. (*Id.* at ¶ 59.)

## II. PROCEDURAL HISTORY

On May 13, 2013, Dr. Cohen and Patient F.L. filed a three-count complaint asserting the following claims against Horizon and VNA: (1) breach of fiduciary duty in violation of 29 U.S.C. § 1132(a)(1)(B); (2) failure to provide full and fair review under ERISA in violation of 29 U.S.C. § 1133; and (3) failure to provide documents under ERISA in violation of 29 U.S.C. § 1132(c)(1)(B).

On August 12, 2013, Horizon moved to dismiss Plaintiffs' complaint on the following bases: (1) Dr. Cohen lacks statutory standing; (2) Patient F.L. lacks Article III standing; and (3) the complaint fails to state a claim for which relief can be granted. Plaintiffs filed an opposition brief on September 30, 2013, and Plaintiffs filed their reply on October 14, 2013.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

6

"Federal Rule of Civil Procedure 12(b)(1) provides that a party may bring a motion to dismiss for lack of subject matter jurisdiction." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Id.* "The party invoking federal jurisdiction bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter in which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Focus v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

"When standing is challenged on the basis of the pleadings, [courts must] accept as true all material allegations in the complaint, and . . . construe the complaint in favor of the complaining party." *Id.* (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988)). However, when the challenging party presents a factual challenge, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Petruska v. Gannon Univ.*, 462 F.3d 204, 302 n.3 (3d Cir. 2006).

In considering a factual attack on a 12(b)(1) motion, "no presumptive truthfulness attaches to plaintiff's allegations," and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* at n.3 (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "It is axiomatic that, in addition to those requirements imposed by statute, plaintiffs must also satisfy

Article III of the Constitution." *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 455 (3d Cir. 2003) (citation omitted). As the Third Circuit has articulated, the requirements of Article III standing are as follows:

> (1) the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).

B. <u>Federal Rule of Civil Procedure 12(b)(6)</u>

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). But, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1429 (3d Cir. 1997). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 6782 (2009) (quoting *Twombly*, 550 U.S. at 555). Thus, a complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Young v. Speziale*, No. 07-3129, 2009 U.S. Dist. LEXIS 105236, *6-7 (D.N.J. Nov. 10, 2009) (quoting *Iqbal*, 556 U.S. at 679). The movant on a Rule 12(b)(6) motion "bears the burden of showing that no claim has been presented." *Henderson v. Equable Ascent Fin., LLC*, 2011, No. 11-3576, 2011 U.S. Dist. LEXIS 127662, at *2 (D.N.J. Nov. 4, 2011) (quoting *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)).

IV. **DISCUSSION**

In moving to dismiss Plaintiffs' complaint, Horizon makes the following arguments: (1) Dr. Cohen lacks statutory standing to sue because the complaint fails to allege "a plausible basis on which he may bring an ERISA claim on Patient F.L.'s behalf"; (2) Patient F.L. lacks Article III standing because the complaint fails to allege that Patient F.L. has suffered an injury in fact, and any injury that Patient F.L. has suffered cannot be redressed by this Court; and (3) the complaint fails to state a valid ERISA claim. The Court will begin its analysis with the standing issue, as standing is a threshold question that implicates the Court's power to hear this case. *See e.g. Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994) (observing that "standing is a threshold question in every federal case.").

A. **Standing**

1. <u>Whether Dr. Cohen Has Statutory Standing to Bring this Suit</u>[2]

---

[2] The Court will analyze Horizon's challenge to Dr. Cohen's statutory standing under the standards applicable to Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Maio v. Aetna, Inc.*, 221 F.3d 472, 482 n.7 (3d Cir. 2000) (distinguishing challenge to plaintiff's standing for lack of injury in fact, which implicates subject matter jurisdiction under Article III and thus falls under Rule 12(b)(1), from a challenge concerning whether a plaintiff meets statutory prerequisites to bring suit).

Under Section 502(a) of ERISA, only "a participant or beneficiary" may generally bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(A)-(B); *see also Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment on the issues in this case."). ERISA defines a "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization or whose beneficiaries may be eligible to receive such benefit." 29 U.S.C. § 1002(7). Furthermore, a "beneficiary" is defined under ERISA as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to benefit thereunder." 29 U.S.C. § 1002(8).

Although the Third Circuit has not specifically addressed whether an assignment of benefits confers ERISA standing on a non-participant or a non-beneficiary, it has observed that "[a]lmost every circuit to have considered the question has held that a healthcare provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare*, 388 F.3d 393, 401 n.7 (3d Cir. 2004). Additionally, the Court is mindful that federal regulations "do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." 29 C.F.R. § 2560.503-1(b)(4).

Here, Horizon argues that Dr. Cohen lacks standing because (1) the complaint fails to allege that the AOB confers upon him the right to file suit under § 502 of ERISA; and (2) Dr. Cohen's preservation of the right to sue Patient F.L. for additional fees related to any procedures defeats any standing that Dr. Cohen may otherwise have. (Def. Br. at 3.)

As an initial matter, this Court cannot conclusively determine the scope of the assignment in the AOB because this document was not attached to either of the parties' respective submissions, and Plaintiffs' complaint fails to include any of the specific language of the assignment. Although this Court has previously held that "the assignment of the right to reimbursement . . . confers derivative standing under ERISA," *see Edwards v. Horizon Blue Cross Blue Shield of N.J.*, No. 08-6160, 2012 U.S. Dist. LEXIS 105266, at *17 (D.N.J. June 4, 2012) (Linares, J.), the Third Circuit has suggested that a court should know the terms and parameters of an assignment before satisfying itself that a provider has derivative standing to sue under ERISA. *See, e.g., Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*, 143 Fed. App'x. 433, 435 (3d Cir. 2005) (holding that provider lacked standing to sue under ERISA where the court had "no way of knowing . . . [the] terms or parameters [of the assignment]").

As this Court has no way of knowing what benefits the AOB conferred upon Dr. Cohen, Plaintiffs have failed to satisfy their burden of establishing Dr. Cohen's standing to sue under ERISA § 502. *See, e.g., Cole v. Guardian Life Ins. Co. of Am.*, No. 11-1026, 2013 U.S. Dist. LEXIS 110876, at *32 (D.N.J. Aug. 7, 2013) (observing that a plaintiff bears the "burden of

establishing . . . the threshold requirement of statutory standing.") (Linares, J.). Accordingly, the Court will dismiss all claims asserted by Dr. Cohen without prejudice.³

### 2. Whether Patient F.L. Has Article III Standing to Sue

Horizon argues that the complaint's failure to allege that Dr. Cohen has attempted or threatened to pursue Patient F.L. for the full amount of the procedures renders him without Article III standing because Patient F.L. has not suffered any injury-in-fact. (*See* Def. Br. at 5.) In Horizon's view, Patient F.L. will have a sufficient injury to confer standing only when Dr. Cohen attempts to collect the outstanding amount of the medical expenses he claims are owed. (*See id.*)

In support of its argument, Horizon relies on two non-binding cases from other jurisdictions – *Ross v. Albany Med. Ctr.*, 916 F. Supp. 196 (N.D.N.Y. 1996) (cited in Def. Reply Br. at 5) and *Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318 (D. Utah 2005) (cited in Def. Def. Reply Br. at 5).

In *Ross*, a defendant hospital overcharged a plaintiff patient for a medical procedure, but then forgave the amount that had been overcharged. 916 F. Supp. 196, 199 (N.D.N.Y. 1996). The plaintiff nevertheless sought a declaratory judgment as to his right not be charged an excess amount because he feared that the hospital would try to reinstate his obligation to pay the forgiven amount. *Id.* The court held that the plaintiff lacked standing because "a fear that an obligation to pay may be reinstated is not sufficient to establish an 'injury-in-fact.'" *Id.* at 200.

---

³ In light of this Court's determination that Plaintiffs have failed to satisfy their burden of establishing Dr. Cohen's standing to sue under ERISA because they have neither attached the AOB to their complaint nor referenced any of the AOB's specific language in their complaint, it is unnecessary to decide whether Dr. Cohen's preservation of the right to sue Patient F.L. for any outstanding amount defeats Dr. Cohen's standing. The Court will, nevertheless, note that Horizon's reliance on *Franco v. Connecticut Life Insurance Co.*, 818 F. Supp. 792 (D.N.J. 2011) for this proposition is not binding on this Court. Moreover, Horizon has not cited, and this Court is unaware of any other authority supporting the proposition that a provider's preservation of the right to sue a plan participant or beneficiary for any amount that an insurer fails to pay defeats a provider's standing to sue under ERISA.

In *Owen*, the court held that a plaintiff could not establish standing based on an amount owed where the entity to whom that amount was owed stated that its records showed a zero-balance with respect to the plaintiff, and further stated that it had no intention to collect on any debt. *Owen*, 388 F. Supp. 2d at 1326.

*Ross* and *Owen* are distinguishable because, unlike the plaintiffs in those cases, Patient F.L.'s injury is not one that is merely illusory or hypothetical. Indeed, nothing in the record suggests that Dr. Cohen has forgiven or will forgive Patient F.L.'s debt. To the contrary, Dr. Cohen's participation as a plaintiff in this case indicates that he has every intention to collect the outstanding amount which he claims he is owed, if not from Horizon then from Patient F.L., himself. (*See* Compl. ¶ 13.) Horizon's failure to pay the benefits allegedly due to Patient F.L., and Patient F.L.'s consequent liability to Dr. Cohen constitute a particularized injury sufficient to confer Article III standing. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("A threatened injury must be *certainly impending* to constitute injury in fact."). Accordingly, insofar as Defendants have moved to dismiss Patient F.L.'s claims for lack of standing, the motion is denied.

Having determined that Patient F.L. has sufficiently pled an injury to confer standing, the Court will now proceed to address the viability of the claims asserted in the complaint under Federal Rule of Civil Procedure 12(b)(6).[4]

### B. Whether the Complaint States Viable Claims for which Relief can be Granted

#### 1. Breach of Fiduciary Duty (Count I)

---

[4] Horizon also argues that Patient F.L. cannot satisfy the redressability prong of the standing analysis because he cannot recover underpaid benefits from Horizon since Horizon was not a fiduciary under the Plan. (*See* Def. Br. at 7; Def. Reply Br. at 6 n.1.) The Court will not reach this issue because, as discussed in further detail below, Plaintiffs will be granted leave to amend the breach of fiduciary duty claim against Horizon.

In relevant part, ERISA defines a "fiduciary" as a person who: "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i), (iii).

Horizon argues that this Court should dismiss Plaintiffs' claim for breach of fiduciary duty because "Horizon is not a fiduciary under the plan." (Def. Br. at 7.) In support of this proposition, Horizon cites to the Plan, which states that "[w]hile Horizon . . . will initially review claims, all final claims decisions will be made by the Plan Administrator [i.e., VNA]." (Def. Br. at 9, citing Bunn Decl., Ex. A at 5, 82.) Additionally, Horizon points out that the Plan specifically states that "[b]enefits are provided in accordance with the provisions of the Plan Sponsor [and that] Horizon . . . provides administrative services only." (Def. Br. at 9, citing Bunn Decl., Ex. A at 82.)

At this stage, the Court's task is not to determine whether Horizon was *actually* a fiduciary. Rather, the Court's task is to determine whether there are sufficient facts alleged in the complaint to support the plausible inference that Horizon acted as a fiduciary under the Plan.

Although the complaint is draped with conclusory assertions that Horizon acted as a fiduciary and exercised discretionary authority (*see, e.g.,* Compl. ¶¶ 15, 16), it lacks specific facts to support the plausible inference that *Horizon* was, in fact, a fiduciary. On a motion to dismiss, this Court may not credit "bald assertions or legal conclusions." *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1429. As it is apparent to the Court that the allegations in support of the breach of fiduciary duty claim fail to raise Patient F.L.'s right to relief above the speculative level, the Court will dismiss the breach of fiduciary duty claim against Horizon

(Count I) without prejudice. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

### 2. Failure to Provide Full and Fair Review (Count II)

In Count II, Plaintiffs allege that Horizon and VNA are liable for both failing "to provide a full and fair review" of their claims and failing "to make necessary disclosures in accordance with 29 U.S.C. § 1133." (Compl. at ¶ 83.) Horizon argues, and Plaintiffs do not dispute, that 29 U.S.C. § 1133 does not confer a private cause of action. (Def. Br. at 9.)

Section 503 of ERISA requires that every employee benefit plan must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claims for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

In *Miller v. Am. Airlines, Inc.*, the Third Circuit observed that "[a]lthough [ERISA] § 502 provides the private right of action to bring a claim to recover benefits due, § 503 sets forth the basic requirements governing ERISA plans." 632 F.3d 837, 850-51 (3d Cir. 2011). Thus, while complying with § 503 may be "probative of whether the decision to deny benefits was arbitrary and capricious," § 503 itself does not provide an independent cause of action. *See Miller*, 632 F.3d at 851; *see also Blakely v. WSMW Indus.*, No. 02-1631, 2004 U.S. Dist. LEXIS 14957 (D. Del. July 20, 2004) ("Section 1133, which mandates certain claims procedures for beneficiaries under ERISA, does not create a private right of action.") (citing *Ashenbaugh v. Crucible, Inc.*, 854 F.2d 1516, 1532 (3d Cir. 1988)).

15

As 29 U.S.C. § 1133 does not confer a private right of action, Plaintiffs' claim against Horizon for failure to provide a full and fair review (Count II) is dismissed with prejudice.

### 3. Failure to Provide Documents Under ERISA (Count III)

Under ERISA § 502(c)(1)(B), "[a]ny administrator who fails or refuses to comply with a request for any information . . . may, in the court's discretion, be personally liable . . . in the amount of $100 a day from the date of such failure or refusal." 29 U.S.C. § 1132(c)(1)(B).

Under ERISA, the word, "administrator," refers only to

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A).

Here, Plaintiffs concede "that their written demand for documents was made only to . . . [Horizon] who is, according to plan documents, *not the plan administrator*." (Pl. Oppn. Br. at 9 n.1.) (emphasis added). As Horizon is not the administrator, it cannot be held liable under 29 U.S.C. § 1132(c)(1)(B). *See, e.g., Tetreault v. Reliance Std. Life Ins. Co.*, No. 10-11420, 2013 WL 823314, at *2 (D. Mass. Mar. 5, 2013) (holding that insurance company that was not the plan administrator could not be held liable for § 1132(c) penalties.).

Accordingly, the Court will dismiss Plaintiffs' claim against Horizon for failure to provide documents under ERISA (Count III) with prejudice.

## V. CONCLUSION

For the reasons set forth above, Horizon's motion is granted in part and denied in part. Specifically, insofar as Horizon has moved to dismiss all claims asserted by Dr. Cohen for lack of standing, the motion is granted; Dr. Cohen's claims are dismissed without prejudice. To the

extent that Horizon has moved to dismiss all claims asserted by Patient F.L. for lack of standing, the motion is denied. Finally, Horizon's motion is granted as to Counts I, II, and III, as these claims are inadequately pled. Count I is dismissed without prejudice to Plaintiffs' right to amend; Count II is dismissed with prejudice; and Count III is dismissed with prejudice only to the extent this claim is asserted against Horizon. Plaintiffs will have thirty (30) days from the date of entry of the Order accompanying this opinion to file an amended complaint consistent with this Opinion

JOSE L. LINARES
U.S. DISTRICT JUDGE

Dated: October 25, 2013